UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-952 JAR |
| | ) | |
| STEPHEN FOWLKES, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Stephen Fowlkes, represented by defense counsel Talmage

E. Newton, IV, and the United States of America (hereinafter "United States" or "Government"),

represented by the Office of the United States Attorney for the Eastern District of Missouri.  This

agreement does not, and is not intended to, bind any governmental office or agency other than

the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to

nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to Count 1 of the charge, the government agrees to move for

the dismissal as to the defendant of Counts 2-6 at the time of sentencing.  Moreover, the United

States agrees that no further federal prosecution will be brought in this District relative to the

1

defendant's wire fraud during the time period alleged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: $18,068.40 seized from Bank of American account ending in 4308.

3. **ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant voluntarily and intentionally devised or made up a scheme to defraud another out of property rights by means of material false representations;

**Two**, the defendant did so with the intent to defraud; and

2

**Three**, the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing, sign, signal or sound for the purpose of executing such scheme.

## 4. <u>FACTS</u>:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Since at least as early as 2014, the Palm Wish Promotional Firm, a.k.a. Palm Wish Productions ("Palm Wish"), offered its customers discounted booking rates on hotels and cars throughout the United States.  Palm Wish was owned and operated by defendant STEPHEN FOWLKES ("Fowlkes").  Palm Wish advertised its discounted bookings through an internet website, www.palmpro.com, operated by Fowlkes.  Customers of Palm Wish contacted Palm Wish by telephone, and Palm Wish representatives then made reservations through legitimate hotel and car rental websites.

Until April of 2018, Fowlkes operated Palm Wish from the basement of a residential home, located in Parkville, MD.  Fowlkes employed multiple reservations agents, all of whom worked in the basement of the Parkville, MD residence.  Fowlkes employed more than five individuals through the Palm Wish organization.  Since 2014, Palm Wish has been responsible for booking over 700 car rental reservations through "E.H.," a national car rental company, using internet reservations placed through E.H.'s internet website.  E.H. is headquartered in St. Louis, Missouri in the Eastern District of Missouri.  All car rental reservations made through the

internet are routed through E.H.'s computer servers, which are based in the Eastern District of Missouri.

Palm Wish charged its customers a booking fee for every car rental reservation it books. "IBM" is a significant corporate client of car rental company E.H.  E.H. offers a special discount car rental rate to employees of IBM.  E.H. authorizes the use of the discounted rental rate for both business and personal car rentals booked by employees of IBM.  The IBM discount code affords IBM employees a substantially discounted car rental rate, as well as providing them with a damage waiver, which waives or reduces the renter's responsibility for loss of, or damage to, the rental vehicle (including but not limited to towing, storage, loss of use, administrative fees and/or diminishment of value).  Fowlkes has never been employed by IBM.

Fowlkes, both personally and through the Palm Wish booking agents he employed, made E.H. car rental reservations for Palm Wish customers using the IBM employee discount code when the Palm Wish customers were not, in fact, employees of IBM.  Fowlkes pre-programmed the IBM employee discount code into the computers his Palm Wish employees used to make car rental reservations for Palm Wish customers.  Fowlkes and his employees made no attempt to ascertain whether the Palm Wish customer was in fact an IBM employee when making the E.H. car rental reservations.  Fowlkes sometimes falsely told Palm Wish customers that he was an IBM employee, and he was extending his E.H. car rental discount to the Palm Wish customer. Fowlkes instructed the Palm Wish reservation agents he employed to tell Palm Wish customers that, if asked by E.H. representatives, they should represent falsely that they were employed by IBM.

Once Palm Wish secured a reservation for a customer, Palm Wish would transmit an invoice to customers requiring payment of a "booking fee" to Palm Wish.  Palm Wish customers paid these booking fees using a number of means, one of which was by submitting payment to a PayPal account controlled by Fowlkes.  Palm Wish customers were responsible for paying the cost of the IBM employee discounted E.H. car rental.

The E.H. car rental reservations made by Palm Wish employees were initiated from computers located in Maryland and were routed through E.H.'s servers, which are located in the Eastern District of Missouri.  Fowlkes and the other Palm Wish employees were responsible for attempting to make over 2,000 E.H. car rental reservations for Palm Wish customers using an IBM employee discount code he was not authorized to use, either by IBM or E.H.  Of those 2,000 reservations, more than 700 resulted in actual car rentals.

On September 23, 2015, Fowlkes, through Palm Wish, secured an E.H. car rental reservation using the IBM employee discount code for customer S.F., who was not an IBM employee.  This reservation was transmitted using a wiring through the Eastern District of Missouri.

Fowlkes, through Palm Wish, engaged in a similar scheme concerning hotel reservations involving at least two major national hotel chains, "H," and "M."  Fowlkes instructed his employees to use discount codes that were not authorized in order to secure hotel reservations. Fowlkes admits herein that he, through Palm Wish, caused over 9,000 reservations to be made at hotel H through the fraudulent use of discount codes, all without the knowledge or authorization of hotel H.  Fowlkes also admits herein that he, through Palm Wish, caused over 2,500 reservations

5

to be made at hotel M through the fraudulent use of discount codes, all without the knowledge or authorization of hotel M.

The government's position is that the fraudulent use of the IBM discount code by individuals who were not in fact IBM employees resulted in an actual loss to E.H. of $672,194.24. The government's position is that the fraudulent use of discount codes resulted in an actual loss to hotel chain H of $706,934.25.  The government's position is that the defendant's fraudulent use of discount codes resulted in an actual loss to hotel chain M of $298,933.25.  The defendant disputes these loss figures.

**5.  STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6.  U.S. SENTENCING GUIDELINES:  2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a.  Chapter 2 Offense Conduct:**

**(1)  Base Offense Level:**  The parties agree that the base offense level is 7, as found in Section 2B.1(b)(a).

(2)  **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

The defendant was an organizer and leader of a criminal activity that involved five or more participants, resulting in an offense level increase of 4, as found in Section 3B1.1(a).

The parties do not believe this scheme was sophisticated as defined by Section 2B1.1(b)(10).

The government's assessment of the loss in this matter is that it is more than $1,500,000.00 but not more than $3,500,000.00, resulting in an offense level increase of 16, as found in Section 2B.1(b)(1).  The defendant disputes this loss amount and intends to advocate for a lower loss amount at the time of sentencing.

b.  **Chapter 3 Adjustments:**

(1)  **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

d.  **Estimated Total Offense Level:**  The government estimates that the Total Offense Level is **24**.  The defendant agrees that the minimum total offense level is **9**, but he disputes the

government's Total Offense Level estimate of **24**, and reserves his right to advocate for a lower total offense level at the time of sentencing.

 **e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

 **f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.  PARTIAL WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

 **a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2)  Sentencing Issues**

The parties disagree as to the loss in this matter, pursuant to U.S.S.G. § 2B1.1(b)(1), and will litigate that issue at sentencing.  Either party reserves the right to appeal the District Court's ultimate loss calculation and any sentence based upon it.

**b.** __Habeas Corpus:__  Except as set forth above, defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.** __Right to Records:__  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.** __OTHER:__

**a.** __Disclosures Required by the United States Probation Office:__  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b.** __Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:__  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.** __Supervised Release:__  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

      d.  **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      e.  **Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143. Based on the presently available information the Government does not intend to move for detention.

      f.  **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all

relevant conduct loss.  The defendant agrees to provide full restitution to all victims of all charges in the indictment.

      **g.  Forfeiture:**  The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.  Defendant specifically agrees to the forfeiture of the following: $18,068.40 seized from Bank of American account ending in 4308.  The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.  The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

      The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

      **h.**     **Admissions:** Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, Defendant agrees that, upon Defendant's signing of this plea agreement, the facts that Defendant has admitted under this plea agreement as set forth above, as

11

well as any facts to which Defendant admits in open court at Defendant's plea hearing, shall be admissible against Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and Defendant expressly waives Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement.

9.  **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10.  <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11. <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:

After pleading guilty and before sentencing, if defendant commits any crime, other than

minor traffic offenses, violates any condition of release that results in revocation, violates any

term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful

information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position

supported by the facts, including but not limited to obstruction of justice and denial of

acceptance of responsibility.

12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands

that there will be no right to withdraw the plea entered under this agreement, except where the

Court rejects those portions of the plea agreement which deal with charges the government

agrees to dismiss or not to bring.

| | |
|---|---|
| _____ | _/s/ Gwendolyn E. Carroll_____ |
| Date | Gwendolyn E. Carroll |
| | Assistant United States Attorney |
| | |
| 8/17/2020 | |
| Date | Stephen Fowlkes |
| | Defendant |
| | |
| 08/18/2020 | |
| Date | Talmage E. Newton, IV |
| | Attorney for Defendant |

14